IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED
MAR 31 2002
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| HENRY F. BLAKE, III, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>UNUMPROVIDENT CORPORATION, a )<br>Delaware corporation, and TERESA WELLS, )<br>in her individual capacity, )<br>)<br>Defendants. ) | Civil Action Number<br>01-C-0849-S<br><br>ENTERED<br>APR - 1 2002  |

### MEMORANDUM OPINION GRANTING MOTION TO REMAND

Plaintiff has moved this Court to remand this case to the Circuit Court of Jefferson County, Alabama. Based on the evidence, and for the reasons articulated herein, the Court concludes that the applicable insurance policy is not covered by the Employee Retirement Income Security Act, 29 U.S. C. §§ 1101 *et seq.* ("ERISA"), and that in any event, the removing Defendant did not comply with the required procedures for removal. The remand motion is therefore due to be granted.

### I. FACTS

Plaintiff Henry F. Blake, III was initially employed by Jim Walter Corporation ("Jim Walter") in 1976. He worked as an hourly miner operator until he was promoted to the salaried position of mine foreman.

Through the Aetna Life and Casualty Company, Jim Walter provided its salaried employees with a comprehensive employer-paid benefits package. These benefits include life

1



insurance, accidental death and dismemberment insurance, comprehensive medical insurance, and long term disability ("LTD") benefits, all described in Jim Walter's forty-nine page booklet "Group Insurance Program for Salaried Employees." The Aetna Group Insurance Program identifies itself as an ERISA Plan: "As a participant in the Plan you are entitled to certain rights and protections under the Employee Retirement Income Security Act. ERISA provides that all plan participants shall be entitled to . . . ." (Plaintiff's Remand Motion, Exhibit "C" at 46.) The Aetna Group Insurance Program is not at issue in this case.

What is at issue in this case is a separate group plan of accident insurance made available by Jim Walter to its salaried employees, and offered through The Continental Insurance Companies, which has now been acquired by Defendant UnumProvident ("UNUM").

The UNUM accidental insurance policy is completely voluntary with salaried employees, and Jim Walter does not pay any part of the premiums for the policy. The participating employees pay all of other premiums. Jim Walter has described its role in the UNUM group plan in a cover letter to its employees: 1) it makes known the availability of the UNUM group plan to employees; 2) it describes the features of the UNUM insurance plan; 3) for the convenience of the employees, it deducts the premiums for the UNUM insurance from the employees' payroll; and 4) it receives from its employees the completed applications for enrollment in the UNUM insurance plan. (Plaintiff's Remand Motion, Exhibit "B".) According to Jim Walter's Benefits Coordinator, Jim Walter provides and assists with the preparation of initial UNUM claim forms upon request of its employees, and provide employees with copies of the UNUM policy and notices of changes in coverage. (Defendant's Opposition to Remand, Exhibit "B".) The document provided to Jim Walter employees describing the UNUM policy

does not mention ERISA. It explains, however, that it does not embody all of the terms and conditions of the UNUM Master Policy. The UNUM Master Policy states that "[the] policy is delivered in and is governed by the laws of the governing jurisdiction and <u>to the extent applicable</u> by the Employee Retirement Security Act of 1974 (ERISA) and any amendments." (Defendant's Opposition to Remand, Exhibit "A")(emphasis added).

On September 24, 1994, Plaintiff was severely injured on the job. One of the questions to be answered by Jim Walter on the UNUM form eliciting information concerning Plaintiff's accident is this: "3. If you filed this and an ERISA program, please advise of the plan number." Bobby Allen, Jim Walter's Benefits Coordinator, responded: "<u> NA </u>" (Plaintiff's Motion to Remand, Exhibit "D"). In processing Plaintiff's claim for benefits, UNUM's supervisory staff verified that the claim was "not ERISA." (Plaintiff's Motion to Remand, Exhibit "F").

UNUM's subsequent denial of Plaintiff's claim for disability benefits led to the instant litigation, initially filed in the Jefferson County Circuit Court on February 28, 2001. According to the Removal Petition, the complaint was served on Defendant UNUM on March 9, 2001; it was served Defendant Teresa Wells on March 5, 2001. It was removed by UNUM to this Court on April 4, 2001. The removal notice indicates that Teresa Wells consented to the removal, but Wells neither signed the removal petition, nor did she file a separate document indicating her consent to removal.

## II. APPLICABLE LAW AND ANALYSIS

### A. ERISA Coverage

ERISA subjects to federal regulation plans providing employees with benefits. *See Nachman Corp. v. Pension Benefit Guaranty Corp.,* 446 U.S. 359 (1980). It is a comprehensive

3

statute designed to promote the interests of employees and their beneficiaries in employee pension and welfare benefit plans. According to the Employment Retirement Income Security Act of 1974, § 514(c)(1), because of its uniform regulatory scheme, ERISA is an example of complete or "super-duper" preemption; it preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by the ERISA statute. A state law claim "relates to" an ERISA plan if it has a "connection with or reference to" an employee benefit plan. *Shaw v. Delta Air Lines,* 463 U.S. 85, 96-97 (1983).

An "employee welfare benefit program" under ERISA has five components: (1) the existence of a plan, fund or program (2) established or maintained (3) by an employer, (4) to provide participants or their beneficiaries (5) disability benefits through an insurance policy. *Butero v. Royal Maccabees Life Ins. Co.*, 174 F.3d 1207, 1214 (11th Cir. 1999).

Pursuant to statutory authorization the Secretary of Labor has promulgated a "safe-harbor" regulation defining the circumstances in which an employer may be involved with a employee welfare benefit plant without being deemed to have "established or maintained it." To reside in the safe-harbor beyond ERISA coverage, a plan must meet four requirements: (1) the employer does not make any contributions to the plan; (2) participation by employees in the plan is completely voluntary; (3) the employer does not endorse the program and is limited to publicizing the plan to employees, collecting premiums thorough payroll deductions, and remitting the dues to the insurer, and; (4) the employer receives no consideration from the plan, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions. *See* 29 C.F.R. 2510.3-1(j) (1998). A plan which satisfies these requirements is deemed as having failed the second element required for

ERISA coverage — namely that the plan be "established or maintained" by the employer. *See Butero*, 174 F.3d at 1214; *Stoudemire v. Provident Life & Accident Ins. Co.*, 24 F. Supp. 2d 1252, 1256 (M.D. Ala. 1998).

In determining whether a plan is "established or maintained" by an employer, a standard of reasonableness applies. While the Eleventh Circuit has not addressed the precise issue, the reasoning of the First Circuit is persuasive. In *Johnson v. Watts Regulator Co.*, 63 F.3d 1129, 1134 (1st Cir. 1995), that Circuit observed:

> In dealing with the regulation, courts have echoed the agency's view of the importance of employer neutrality. [citations omitted] But as the regulation itself indicates, remaining neutral does not require an employer to build a moat around a program or to separate itself from all aspects of program administration. Thus, as long as the employer merely advises employees of the availability of group insurance, accepts payroll deductions, passes them on to the insurer, and performs other ministerial tasks that assist the insurer in publicizing the program, it will not be deemed to have endorsed the program under section 2510.3-1(j)(3). [citations omitted] It is only when an employer purposes to do more, and takes *substantial steps in that direction*, that it offends the ideal of employer neutrality and brings ERISA into the picture.

Id. at 1134 (emphasis added). The reasonable "employees' viewpoint should constitute the principal frame of reference in determining whether [an employer has endorsed a plan]." *Id.* at 1134-1135. Thus, an employer is considered to have endorsed a plan when it engages "'in activities that would lead [an employee] reasonably to conclude that the program is part of a benefit arrangement established or maintained by the [employer].'" *Id.* at 1134 (quoting Department of Labor Op. No. 94-26A (1994)).

It is undisputed that Plaintiff meets the first, second, and fourth requirements of the safe-harbor. Jim Walter did not make contributions to the UNUM Plan; the Plan was completely voluntary; and Jim Walter did not receive any consideration or benefit in connection with the

5

Plan.

Under the undisputed facts, Plaintiff's reached a reasonable conclusion that his employer did not establish or maintain the UNUM Plan. The following considerations provide more than ample support for Plaintiff's conclusion:

   1) Unlike the Aetna Group Insurance Plan, which was distributed to all employees by Jim Walter, the UNUM Plan does not unequivocally identify itself as an ERISA Plan.

   2) UNUM's Master Policy, not distributed to Jim Walter and unavailable on Jim Walter's premises, merely alludes to the possibility of the UNUM Plan being subject to ERISA.

   3) Jim Walter did not consider and did not treat the UNUM Plan as an ERISA Plan.

   4) UNUM itself disclaimed ERISA when processing Plaintiff's claim.

   5) Jim Walter had no role in the design, management, and operation of the UNUM Plan.

   6) Jim Walter's role in the UNUM Plan was quintessentially ministerial: it provides employees with copies of the policy when they sign up for the UNUM Plan; it distributes the initial claim forms to employees on request; it assists employees in completing the claim forms on request; and it provides notices to employees of changes in coverage under the UNUM Plan.

Under these circumstances, Plaintiff has established the UNUM Plan rests in the safe harbor from ERISA coverage.

### B. UNUM's Compliance with Removal Procedural Requirements

Title 28 U.S.C. § 1441(a) requires that all defendants join in a removal petition. *See* 28 U.S.C. § 1446. Here, one of the Defendants neither joined in the removal petition, nor filed a separate document indicating her consent to removal.

In similar circumstances, this court and the Fifth Circuit Court of Appeals have held that each defendant must file a document with the court indicating its consent to removal. In *Miles v.*

*Kilgore*, 928 F. Supp. 1071, 1076 (N.D. Ala. 1996), this court held:

> that in a civil action where there are several served defendants, the mere bald, unsupported assertion in a notice of removal by one removing defendant that all the other defendants consent to the removal fails to constitute a sufficient consent to removal.

The court relied, in part, on *Getty Oil Corp. v. Insurance Co. of North Am.*, 841 F.2d 1254, 1262 n.11 (5th Cir.1988), where the Fifth Circuit stated:

> [W]hile it may be true that consent to removal is all that is required under section 1446, a defendant must do so itself. This does not mean that each defendant must sign the original petition for removal, but there must be some timely filed written indication from each served defendant, or from some person or entity purporting to formally act on its behalf in this respect and to have authority to do so, that it has actually consented to such action. Otherwise, there would be nothing on the record to "bind" the allegedly consenting defendant. In the present case, nothing in the record, except INA's unsupported statement in the original removal petition, indicates that NL actually consented to removal when the original petition was filed.

*Getty Oil*, 841 F.2d at 1262 n.11. In the absence of contrary teachings from th Eleventh Circuit, this Court elects to follow *Miles* and *Getty Oil*, fully mindful of authority to the contrary. *See Jasper v. Wal-Mart Stores, Inc.*, 732 F. Supp. 104, 105 (M.D. Fla. 1990).

In conclusion, the case must be remanded on the separate and independent ground that Defendant Teresa Wells did not timely file with the Court a written document indicating her consent to removal.

Because Plaintiff has shown that the UNUM Plan is not covered by ERISA, and that one of the Defendants did not timely file in this Court her written consent to removal, the case will be remanded to the Circuit Court of Jefferson County, Alabama.

Done this 31st day of March, 2002.

_____
Chief United States District Judge
U.W. Clemon

8